David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel.: (213) 446-6652
Fax: (212) 202-7880

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

GINO WASHINGTON,

            Plaintiff,

       v.

PACIFIC BIOSCIENCES OF CALIFORNIA, INC., MICHAEL HUNKAPILLER, DAVID BOTSTEIN, BILL ERICSON, CHRISTIAN HENRY, RANDY LIVINGSTON, JOHN F. MILLIGAN, MARSHALL L. MOHR, KATHY ORDOÑEZ, and LUCY SHAPIRO,

            Defendants.

Civil Action No. 5:18-cv-7614

**DEMAND FOR JURY TRIAL**

1. **VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT**

2. **VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT**

Gino Washington ("Plaintiff"), by and through his undersigned attorneys, brings this action on behalf of himself against Pacific Biosciences of California, Inc. ("Pacific Biosciences" or the "Company") and the members of the Company's board of directors (the "Board" or the "Individual Defendants," and, together with Pacific Biosciences, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78n(a), 78t(a), respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of Pacific Biosciences by Illumina, Inc. ("Illumina").

1

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

## NATURE OF THE ACTION

1. On November 1, 2018, Pacific Biosciences, Illumina, and FC Ops Corp, a Delaware corporation and a wholly owned subsidiary of Illumina ("Merger Sub"), entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into Pacific Biosciences, with Pacific Biosciences continuing as the surviving corporation and as a wholly owned subsidiary of Illumina (the "Proposed Transaction").

2. Pursuant to the terms of the Merger Agreement, each outstanding share of Pacific Biosciences common stock will be converted into the right to receive $8.00 in cash (the "Merger Consideration").

3. On December 18, 2018, in order to convince Pacific Biosciences' public common stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In particular, the Proxy contains materially incomplete and misleading information concerning the valuation analyses conducted by the Company's financial advisor, Centerview Partners LLC ("Centerview"), in support of its fairness opinion.

5. The special meeting of Pacific Biosciences stockholders to vote on the Proposed Transaction is currently scheduled for January 24, 2019 (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the Stockholder Vote and taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Pacific Biosciences' public common stockholders sufficiently in advance of the Stockholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8. This Court has jurisdiction over the Defendants because each Defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Pacific Biosciences is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

10. Plaintiff is, and has been at all times relevant hereto, a common stockholder of Pacific Biosciences.

11. Defendant Pacific Biosciences is a Delaware corporation and maintains its principal executive offices at 1305 O'Brien Drive, Menlo Park, California 94025. Pacific Biosciences offers sequencing systems to help scientists resolve genetically complex problems. The Company's common stock is listed on the NASDAQ under the ticker symbol "PACB".

12. Defendant Michael Hunkapiller is, and has been at all relevant times, a director of Pacific Biosciences, and currently serves as the Company's CEO, President, and Chairman of the Board.

13. Defendant David Botstein is, and has been at all relevant times, a director of Pacific Biosciences.

14. Defendant Bill Ericson is, and has been at all relevant times, a director of Pacific Biosciences.

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

15. Defendant Christian Henry is, and has been at all relevant times, a director of Pacific Biosciences.

16. Defendant Randy Livingston is, and has been at all relevant times, a director of Pacific Biosciences.

17. Defendant John F. Milligan is, and has been at all relevant times, a director of Pacific Biosciences.

18. Defendant Marshall L. Mohr is, and has been at all relevant times, a director of Pacific Biosciences.

19. Defendant Kathy Ordoñez is, and has been at all relevant times, a director of Pacific Biosciences.

20. Defendant Lucy Shapiro is, and has been at all relevant times, a director of Pacific Biosciences.

21. The defendants identified in paragraphs 12 through 20 are collectively referred to herein as the "Individual Defendants" and/or the "Board," collectively with Pacific Biosciences the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I. Company Background and the Proposed Transaction

22. Pacific Biosciences offers sequencing systems to help scientists resolve genetically complex problems. Based on its novel SMRT Technology, Pacific Biosciences' products enable: de novo genome assembly to finish genomes in order to more fully identify, annotate and decipher genomic structures; full-length transcript analysis to improve annotations in reference genomes, characterize alternatively spliced isoforms in important gene families, and find novel genes; targeted sequencing to more comprehensively characterize genetic variations; and real-time kinetic information for epigenome characterization. Pacific Biosciences' technology provides high accuracy, ultra-long reads, uniform coverage, and the ability to simultaneously detect epigenetic changes.

23. Illumina is the global leader in sequencing- and array-based solutions for genetic analysis. Illumina's products and services serve customers in a wide range of markets, enabling

the adoption of genomic solutions in research and clinical settings. Illumina's customers include leading genomic research centers, academic institutions, government laboratories, and hospitals, as well as pharmaceutical, biotechnology, commercial molecular diagnostic laboratories, and consumer genomics companies

24. On November 1, 2018, Pacific Biosciences and Illumina issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

**Illumina to Acquire Pacific Biosciences for Approximately $1.2 Billion, Broadening Access to Long-Read Sequencing and Accelerating Scientific Discovery**

- *Brings Together Highly Accurate Short- and Long-Read Sequencing Technologies, Paving the Path to a More Perfect View of a Genome*

- *Pacific Biosciences' Recent Advances with its Sequel SMRT® Technology, Combined with Illumina's Infrastructure, will Expand Biological Discovery and Clinical Insight*

- *Long-Read Sequencing Market Opportunity Expected to Grow to $2.5B by 2022*

**SAN DIEGO & MENLO PARK, Calif.**—(BUSINESS WIRE)—Nov. 1, 2018— Illumina, Inc. (NASDAQ: ILMN) and Pacific Biosciences (NASDAQ:PACB) today announced they have signed an agreement for Illumina to acquire Pacific Biosciences at a price of $8.00 per Pacific Biosciences share in an all-cash transaction. This price represents a premium of 71% to Pacific Biosciences' 30 trading day volume weighted average share price as of the market close on October 31st, 2018, and a total enterprise value of approximately $1.2 billion on a fully diluted basis.

The agreement has been approved by the board of directors of Illumina and Pacific Biosciences. The acquisition complements Illumina sequencing solutions with accurate long-read sequencing capabilities to answer a set of complex genomic questions. While Illumina's accurate and economic short-read sequencing platforms address the majority of sequencing applications optimally, select applications, such as de novo sequencing and sequencing of highly homologous regions of genomes, are better addressed with accurate long-reads. With its acquisition of Pacific Biosciences, Illumina will be positioned to provide integrated workflows and novel innovations that bring together the best of both technologies to help researchers advance their discoveries faster and clinicians offer new tests economically.

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

"PacBio's unmatched accuracy mirrors that of Illumina's in short-read sequencing. Combining the two technologies positions us to reach more applications, accelerate the pace of genomic discovery and bolster our innovation engine which has been a hallmark of Illumina since our inception," said Francis deSouza, President and Chief Executive Officer of Illumina. "PacBio's relentless pursuit to improve sequencing accuracy, while driving down the cost, underscores the potential of long-reads to expand sequencing to new customers and applications."

"Illumina continues to democratize the use of sequencing at an unprecedented rate. Through this combination, thousands of researchers will now have direct access to this technology," said Michael Hunkapiller, Ph.D., Chief Executive Officer of Pacific Biosciences. "Illumina and Pacific Biosciences have shared values and a commitment to innovation. Our complementary sequencing technology, once integrated, will offer customers a new standard of insight and understanding, opening new frontiers of genomic utility."

The transaction is subject to approval by the shareholders of Pacific Biosciences, as well as other customary closing conditions, including applicable regulatory approvals. Illumina expects to close the transaction in mid-2019.

Goldman Sachs & Co. LLC is serving as financial advisor and Covington & Burling LLP is serving as legal advisor to Illumina. Centerview Partners LLC is serving as financial advisor and Wilson Sonsini Goodrich & Rosati LLP is serving as legal advisor to Pacific Biosciences.

Illumina will host a conference call to discuss the transaction today, November 1, 2018 at 2:00 p.m. (Pacific Time).[1]

25.     The Merger Consideration offered to Pacific Biosciences stockholders in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company's common stock is materially in excess of the Merger Consideration being offered for those securities in the Proposed Transaction given the Company's prospects for future growth and earnings.

---

[1]     Pacific Biosciences of California, Inc., Current Report (Form 8-K), at Exhibit 99.1 (Press Release, dated November 1, 2018) (Nov. 5, 2018).

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

26. For example, on November 12, 2018, Cantor Fitzgerald issued an $8.00 price target for the Company's common stock. Accordingly, the Merger Consideration provides Company stockholders with no premium over its projected value.

27. Furthermore, even Centerview's financial analyses demonstrate that the Merger Consideration undervalues the Company. Indeed, Centerview's *Discounted Cash Flow Analysis* indicates an implied value per share of Pacific Bioscience common stock as high as $9.20 per share, reflecting an additional 15% premium to the Merger Consideration.

28. Accordingly, it is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's stockholders can properly exercise their corporate suffrage rights and make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

## II. The Proxy is Materially Incomplete and Misleading

29. On December 18, 2018, the Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Pacific Biosciences' stockholders. The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

30. The Proxy describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Pacific Biosciences' stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Pacific Biosciences' common stockholders.

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

31. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the inputs and assumptions underlying the selection of the discount rates ranging from 11% to 13%; (ii) the range of implied terminal values of Pacific Biosciences at the end of the Forecast period; (iii) the inputs the inputs and assumptions underlying the selection of the illustrative range of EBITDA multiples of 12.0x to 16.0x; and (iv) the number of fully-diluted outstanding shares of common stock as of October 30, 2018. *See* Proxy at 51.

32. These key inputs are material to Pacific Biosciences common stockholders, and their omission renders the summary of Centerview's *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….* This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Pacific Biosciences' stockholders cannot evaluate for themselves the reliability of Centerview's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied per share reference ranges

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

reflect the true value of the Company or was the result of Centerview's unreasonable judgment, and make an informed decision regarding whether to vote in favor of the Proposed Transaction

33. With respect to Centerview's *Selected Public Company Analysis*, the Proxy fails to disclose the individual multiples for the companies observed by Centerview's in the analysis. *See* Proxy at 48-49. The omission of these multiples renders the summary of the analysis and the multiples and implied equity reference ranges calculated for Pacific Biosciences misleading. A fair summary of Centerview's *Selected Public Company Analysis* requires the disclosure of the individual multiples for each company; merely providing the high, low, and median multiples that a banker applied is insufficient, as Pacific Biosciences' stockholders unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's value.

34. Similarly, with respect to the Centerview's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples for the transactions Centerview evaluated. *See* Proxy at 50-51. For the same reasons mentioned above, the omission of these multiples renders the summary of the analysis and the multiples and implied per share equity value reference ranges calculated misleading. Accordingly, a fair summary of Centerview's *Selected Precedent Transactions* requires disclosure of the individual multiples that were observed.

35. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Stockholder Vote, Plaintiff will be unable to make a fully-informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## <u>COUNT I</u>

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

9

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

40. Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the valuation analyses conducted by Centerview in support of its fairness opinion.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to common stockholders although they could have done so without extraordinary effort.

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

42. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Centerview reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Centerview, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Centerview's analyses in connection with their receipt of the fairness opinions, question Centerview as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement.

44. Pacific Biosciences is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

45. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Stockholder Vote.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Pacific Biosciences within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Pacific Biosciences, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy by Plaintiff to be misleading prior to the date the Proxy was issued, and had the ability to prevent the issuance of the false and misleading statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as the Proxy sets forth, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Enjoining Defendants and all persons acting in concert with them from proceeding with the Stockholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

DATED: December 18, 2018

Respectfully submitted,
*/s/ David E. Bower*
David E. Bower

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Fax: (212) 202-7880
Email: dbower@monteverdelaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**